UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRE R.,[1]<br><br>　　　　Plaintiff<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>　　　　Defendant. | Case No. 2:21-cv-06383-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.　PROCEDURAL HISTORY

Plaintiff filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See https://www.ssa.gov/history/commissioners.html*. She is therefore substituted as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

disputed issues in the case [Dkt. 20 ("Pltf.'s Br."), Dkt. 23 ("Def.'s Br.") and Dkt. 24 "(Reply")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In May 2018, Plaintiff filed his application for SSI alleging a disability onset date of December 1, 2015. [Dkt. 15, Administrative Record ("AR") 196-204.] Plaintiff claimed that he suffered from lower back pain, narcolepsy and ADHD. [AR 68.] Plaintiff's application was denied initially and on reconsideration. [AR 94.] On March 13, 2020, Administrative Law Judge ("ALJ") Cynthia A. Minter held an administrative hearing. [AR 33-57.] On December 28, 2020, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 12-32.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. [AR 17.] At step two, the ALJ found that Plaintiff suffered from severe impairments including narcolepsy, hypersomnia, and degenerative disc disease of the lumbar spine with radiculopathy. [AR 18.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 22.] Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, except:

> The claimant needs a job where he can alternate from sitting to standing and walking, every thirty to forty-five minutes. The claimant is capable of occasional pushing and pulling with his upper extremities and occasional climbing of stairs, but he cannot climb ladders, ropes and/or scaffolds. He can occasionally stoop, bend, kneel, crouch and crawl. The claimant is unable to work around heavy equipment or machinery or drive any kind of vehicle and he should avoid extreme cold and even moderate exposure to wetness, fumes, odors or other

respiratory irritants. [AR 22.]

Applying this RFC, the ALJ found at step four that Plaintiff had no past relevant work, but he is capable of making a successful adjustment to other work that exists in significant numbers in the economy, including work as a labeler, merchandise marker, and mail sorter. [AR 28.]  Therefore, the ALJ concluded that Plaintiff is not disabled.  [AR 28].

Plaintiff objects to the ALJ's decision of non-disability on two grounds: (1) the ALJ failed to account for all of Plaintiff's true limitations in the residual functional capacity finding due to his hypersomnia/narcolepsy and (2) the ALJ failed to properly consider the statements in the third-party function reports.  [Dkt. 20, 24.]  Defendant asserts that the ALJ's decision should be affirmed.  [Dkt. 23.]

## III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.  The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## IV.   DISCUSSION

### 1. The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff first contends that the ALJ erred by not including additional

3

limitations in the RFC that "would reasonably be expected" to result from his sleep disorders. According to Plaintiff, the ALJ failed to account for his constant struggle to stay awake during the day which would likely cause him to "be off-task for 20% of his shift." [Pltf.'s Br. at 3-4.] Plaintiff argues that substantial evidence including treatment notes and his demonstrated inability to stay awake during the administrative hearing establishes that his inability to stay awake during the day would significantly impact his ability to work.

To the extent that Plaintiff contends that the ALJ failed to properly consider relevant medical evidence concerning his sleep related impairments when assessing the RFC, the Court disagrees.

### A. Relevant Medical Evidence

Plaintiff applied for benefits on May 31, 2018, alleging impairments primarily due to back pain and sleep related disorders. Plaintiff testified at the administrative hearing that, although he sleeps on average 8 hours or more a night, his narcolepsy causes him to fall asleep periodically throughout the day, sometimes up to ten times a day. [AR 42.] Due to his sleep disorders, Plaintiff currently takes Adderall, but he continues to fall asleep during the day.

About two years before applying for benefits, Plaintiff who was 37 years old at the time, participated in a sleep study conducted around April 29, 2016, due to his "narcoleptic episodes." [AR 343, 356, 368.] The sleep study showed evidence of "pathological sleepiness" and "possible narcolepsy." [AR 368.] Plaintiff was advised not to drive or operate heavy machinery. Following his diagnosis, Plaintiff's sleep specialist Salim Harianawala, M.D prescribed Ritalin, to be taken twice a day, and Plaintiff was instructed to consolidate his sleep habits and keep a regular schedule. [AR 344.] Plaintiff presented for a follow-up appointment with his sleep specialist on October 27, 2016, and Dr. Harianawala noted that Plaintiff had not yet started his prescription medication (due to problems with insurance) and he had not yet regulated his sleep schedule "to allow therapy to work." [AR 348.]

In January 2017, Dr. Harianawala noted that Plaintiff continued to have "extremely poor sleep habits" and was using the Ritalin only infrequently. [AR 349.] After he "strongly reiterated" recommendations to consolidate his sleep schedule and take his medication twice a day, Plaintiff's doctor noted that due to Plaintiff's lack of consistency with his treatment plan, it was "almost impossible to evaluate efficacy of medication." [AR 351.]

There was a gap in treatment for over a year between March 2017 and May 2018. [AR 353, 380.] At his May 2018 appointment, Plaintiff was provided with more refills and Dr. Harianawala urged Plaintiff to be more compliant and consistent with treatment. [AR 381.] Plaintiff inquired about "newer therapies" for narcolepsy but when advised, Plaintiff reported "he wants to think about it." [AR 380.] Dr. Harianawala noted that the discussion about new and different medications and Plaintiff's reluctance was "similar to a conversation [they] had last year." [AR 380.] In August 2018, Dr. Harianawala increased Plaintiff's medication dosage at Plaintiff's request, but Dr. Harianawala advised Plaintiff that he would deny any further dosage increases due to side effects. [AR 407.] Plaintiff was again urged to be more compliant and consistent, and his doctor again discussed proper sleep hygiene with him. [AR 407.]

In October 2018, Plaintiff reported his medication had been helping him stay awake during the day. [AR 409, 430.] Dr. Harianawala continued Plaintiff's prescription and noted Plaintiff was "asymptomatic." [AR 411, 432.] In January 2019, Plaintiff was noted as "doing much better" overall, and his sleep issues had improved on medication. [AR 412, 433.] However, in May 2019, Plaintiff reported more frequent episodes of falling asleep during the day (AR 415, 436), and in July 2019, he had no significant improvement on his current dosage. [AR 418, 439.] Dr. Harianawala declined to change Plaintiff's medication dosage until a new sleep study could be conducted. [AR 419, 440.] In August 2019, Plaintiff participated in a new sleep study which revealed results consistent with hypersomnia without

narcolepsy. During the study, Plaintiff was noted as taking no medications and he was noted as having inadequate sleep hygiene. The doctor "strongly advised" Plaintiff to follow sleep hygiene recommendations. [AR 423, 444.] The doctor also recommended a change in medication, but Plaintiff (again) wanted to hold off and discuss with another provider first. [AR 422-23, 443-44, 447.]

On January 3, 2019, Dr. Harianawala provided a medical opinion stating that due to Plaintiff's narcolepsy he would need to lie down at unpredictable intervals during the workday. [AR 401.] Further, due to his chronic lower back pain and narcolepsy, Plaintiff was likely to miss work more than three times a month. [AR 402.]

### B. Relevant Law

A claimant's RFC is the most a claimant can still do despite his limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 416.945(a)); Social Security Ruling ("SSR") 96-8p (an RFC assessment is ordinarily the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days week, or an equivalent work schedule"). In assessing a claimant's RFC, the ALJ must consider all of the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(2), (3). If a RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." SSR 96-8p; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (explaining that an ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence).

### C. Analysis

In support of Plaintiff's argument that, despite his medication, he suffers from such persistent narcolepsy symptoms that he cannot work, Plaintiff cites (1) his treatment notes from May 2019 through September 2019 (AR 415-416, 418-419;

6

421) demonstrating that he continued to complain of frequent "sleep attacks during the day;" (2) the August 2019 sleep study where Plaintiff continued to experience "pronounced daytime sleepiness"; and (3) his inability to stay awake during the 33-minute administrative hearing. [AR 35, 53-57.] Contrary to Plaintiff's assertions otherwise, this evidence does not demonstrate that the ALJ's RFC determination lacks substantial evidentiary support for several reasons.

First, to the extent that Plaintiff argues that the medical evidence of record compelled an RFC with greater limitations, Plaintiff fails to articulate specific error. *See Pacheco v. Berryhill*, 733 F. App'x 356, 358 (9th Cir. 2018) (noting plaintiff's failure to identify any specific errors the ALJ made when assessing the evidence). At the outset, there is no medical opinion in the record explicitly stating that Plaintiff would be off-task 20% of the day due to his sleep disorder. To the contrary, there is substantial evidence in the record supporting the ALJ's finding that Plaintiff had only a mild limitation in his ability to maintain concentration and pace throughout the workday. For example, the state agency consultants and the examining physician considered Plaintiff's history of narcolepsy and determined that Plaintiff could still perform light work without the additional "off-task" limitations suggested by Plaintiff. Citing Plaintiff's history of narcolepsy, Dr. F. Greene opined that Plaintiff must avoid climbing ladders, ropes, and scaffolds and avoid work at unprotected heights and around hazardous machinery to account for his sleep disorders. [AR 78.] The ALJ found this PAMF to be persuasive and incorporated that assessment into the RFC. Further, on September 5, 2018, Plaintiff attended his consultative examination and reported that he experiences back pain and narcolepsy. [AR 392.] Upon examination however, consulting examiner Allen Sung, Psy.D., observed that during performance tasks, Plaintiff was able to sustain concentration and work without distraction. [AR 394.] The ALJ found this opinion, which addresses Plaintiff's ability to focus and otherwise stay on-task, persuasive.

While Dr. Harianawala opined that Plaintiff would have "extreme" limitations

1  in maintaining pace, marked limitations in concentrating and persisting, and he
2  would miss more than three days of work a month due to his mental impairments,
3  the ALJ disagreed with this portion of the opinion. [AR 22, 398-99.] In addressing
4  the consistency and supportability of Dr. Harianawala's opinion, the ALJ found the
5  sleep specialist's treating opinion only partially persuasive because his opinion that
6  Plaintiff would miss more than three days of work a month was inconsistent with the
7  medical evidence. [AR 26.] This was an appropriate conclusion. There was
8  nothing in Dr. Harianawala's treatment notes or other evidence in the record
9  suggesting that Plaintiff's narcolepsy would cause such frequent absenteeism.
10 Moreover, as suggested by the ALJ, the record contradicts Plaintiff's claim that his
11 impairments would cause him to miss work multiple times a month. For example,
12 throughout the record, Plaintiff arrived consistently and promptly for various
13 medical appointments with no apparent difficulty. [AR 391.] Thus, in making the
14 RFC, the ALJ reviewed and considered Plaintiff's complete medical history and
15 records and found that the positive objective clinical and diagnostic findings did not
16 support more restrictive functional limitations. [AR 15-17.]
17         Second, Plaintiff's argument that the ALJ failed to adequately acknowledge
18 evidence that Plaintiff continued to experience daytime sleepiness lacks merit.
19 Rather, the ALJ considered the evidence on which Plaintiff relies. In "considering
20 [Plaintiff's] daytime sleepiness," the ALJ evaluated the evidence cited by Plaintiff
21 and found that despite Plaintiff's narcolepsy/hypersomnia, Plaintiff was still capable
22 of light work with limitations including that "he is unable to work around heavy
23 equipment or machinery or drive any kind of vehicle…" [AR 23-25.] In doing so,
24 the ALJ relied on the prior administrative medical finding (PAMF) from state
25 agency medical consultant, Dr. F. Greene and the opinion of Plaintiff's sleep
26 specialist Dr. Harianawala who both opined that Plaintiff has the capacity to
27 perform light work. [AR 26.] The ALJ then assessed greater limitations that those
28 recommended by Dr. F. Greene by including in the RFC additional limitations that

1 Plaintiff requires changes in position throughout the workday every thirty to forty-
2 five minutes, can do no more than occasionally push and/or pull with the upper
3 extremities, and is precluded from driving any kind of vehicle. [AR 22.] The ALJ
4 thus reviewed the evidence cited by Plaintiff and incorporated the limitations he
5 found appropriate to accommodate Plaintiff's sleep disorder. Plaintiff may have a
6 different interpretation of that evidence, but he does not show why the ALJ's
7 reasoning is inadequate. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)
8 ("Where evidence is susceptible to more than one rational interpretation, it is the
9 ALJ's conclusion that must be upheld.").

10 Additionally, in addressing the treatment records from May 2019 and July
11 2019 indicating that Plaintiff was experiencing continued symptoms despite taking
12 his prescription medication, the ALJ explained that despite this evidence, Plaintiff's
13 overall treatment record did not support disabling symptoms or additional
14 limitations in the RFC because Plaintiff was treated conservatively and was not
15 compliant with his treatment plan. [AR 24.]; see 20 C.F.R. § 416.929(c)(3)(iv), (v)
16 (treatment and its effectiveness is a factor to consider in concert with other
17 evidence); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ
18 acknowledged that at times, Plaintiff's symptoms were not entirely controlled with
19 medication, but there was also evidence to suggest that Plaintiff's condition was
20 controlled when Plaintiff complied treatment. As noted by the ALJ, although
21 Plaintiff was prescribed Adderall, he often did not take it as prescribed despite Dr.
22 Harianawala's continued urging that Plaintiff increase compliance, be more
23 consistent with his medication and adopt better sleep hygiene. [AR 354, 381.]
24 When Plaintiff was compliant in October 2018, Plaintiff reported his medication had
25 helped him stay awake during the day and Dr. Harianawala noted Plaintiff was
26 "asymptomatic." [AR 409, 411, 430-432.] In January 2019, Plaintiff was noted to
27 be doing better overall, and that his sleep issues had improved on medication. [AR
28 412, 433.] Beginning May 2019 when Plaintiff began experiencing a regression in

his improvements, Dr. Harianawala ordered a sleep study. [AR 437.] The sleep study showed that Plaintiff continued to experience daytime sleepiness, but Plaintiff reported "taking no medications during the study." [AR 426.] Further, following the results of the study it was recommended that Plaintiff switch to new prescription medication "Provigil," but Plaintiff declined opting to wait to speak with his physician. [AR 444.] Where a plaintiff "complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In sum, based on the overall record—including the medical evidence, Plaintiff's treatment history, his reports and testimony, and the opinion evidence, which the ALJ found partially persuasive for the reasons and to the extent cited—the ALJ found that Plaintiff retains the RFC to perform light work. While Plaintiff argues that the ALJ erred in not accommodating his sleep disorders, Plaintiff must show more than the "mere existence of impairments" to prove disability. *Artis v. Barnhart*, 97 F. App'x 740, 741 (9th Cir. 2004) (citing *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)). He must demonstrate that the impairments resulted in functional limitations which prevent him from engaging in substantial gainful activity. *Id.* Accordingly, the RFC set by the ALJ is supported by substantial evidence. *Coleman v. Saul*, 979 F.3d 751,755 (9th Cir. 2020).

### 2. Third-Party Statements

Plaintiff contends that the ALJ improperly disregarded the supporting third-party function reports from Tatiana Allen, Plaintiff's sister, and L. Sanders, Plaintiff's aunt, based solely on their familial relationship. [Pltf.'s Br. at 5-7.]

An ALJ may disregard testimony from lay witnesses if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Inconsistency with medical evidence is a germane reason to reject third-party testimony. *Altman v. Saul*, 805 F. App'x 452, 455 (9th

Cir. 2020) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).  So too is observing that a third-party's testimony describes limitations similar to those of a claimant whose testimony has properly been discounted.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir 2009); *Kallenbach v. Berryhill*, 766 F. App'x 518, 521 (9th Cir. 2019) (same).

      Even if an ALJ impermissibly relies "on one of several reasons" in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and ultimate credibility determinations were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation and emphasis omitted).

      Here, the ALJ considered the third-party function reports, but rejected them. Contrary to Plaintiff's assertion, the ALJ provided three rationales for doing so. First, the ALJ remarked that by virtue of their relationship to Plaintiff, Ms. Allen, and Ms. Sanders "cannot be considered disinterested third parties" as they have "a natural tendency to agree with the symptoms and limitations Plaintiff alleges." [AR 27.]  Second, in the decision after discussing the various functional limitations alleged by Ms. Allen and Sanders, the ALJ noted that those allegations were inconsistent with the medical evidence. [AR 18-20, 23.]  Finally, the ALJ incorporated the statements made by Ms. Allen and Ms. Sanders into the reasons he gave for discounting Plaintiff's credibility. [AR 18-20, 23.]

      Arguably, the ALJ's first reason—that the lay witnesses are less credible because they're related to Plaintiff—is likely an inadequate basis for dismissing third-party testimony.  *Compare Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("[The lay witness's] close relationship with [the claimant] is not a germane reason to discount the weight of his observations."); and *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (a lay person's status as an "interested party" was not a germane reason "in the abstract" without concrete evidence of bias); *with Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ

11

gave a germane reason for doubting a lay witness who had a "close relationship" with the claimant and who "was possibly influenced by her desire to help him") (internal quotation marks and alteration omitted). However, it is unnecessary to resolve the question of whether this reason was germane to the lay witnesses. Even assuming that this reason did not suffice, the last two reasons did.

The ALJ's second reason was that the third-party allegations conflicted with the medical evidence in the record. This was a germane reason not to credit the lay witnesses' statements. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with the medical evidence" was a germane reason for rejecting lay testimony); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence."); *see also Burkett v. Saul*, 806 F.App'x. 509 (9th Cir. 2020) (upholding an ALJ's reasoning to discount lay testimony "given that the degree to which she reported that the claimant is limited is somewhat inconsistent with the above-described record as a whole").

Finally, the ALJ incorporated the lay witness statements into the statements made by Plaintiff which repeatedly demonstrated that the third-party testimony essentially mirrored Plaintiff's discredited allegations. [See e.g. AR 19 "The claimant, Ms. Allen, and Ms. Sanders alleged that the claimant has problems completing tasks"; AR 20 "The claimant, Ms. Allen, and Ms. Sanders alleged that the claimant needs reminders…"; AR 23 "Regarding the claimant's narcolepsy and hypersomnia, the claimant, his sister Ms. Tatiana Allen and his aunt, Ms. L. Sander alleged that the claimant has problems with personal care…"] Plaintiff does not challenge the ALJ's rejection of his own subjective complaints. This is therefore a sufficient reason for rejecting the lay witness testimony.

Where, as here, the ALJ gives valid reasons for rejecting Plaintiff's testimony, this is sufficient to support a finding that the lay witness testimony also is not credible. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (if ALJ

gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness); *Lentini v. Colvin,* No. CV 15-02310-DTB, 2016 WL 4150761 (C.D. Cal. Aug. 2, 2016), *judgment entered,* No. CV 15-02310-DTB, 2016 WL 4161825 (C.D. Cal. Aug. 2, 2016)(If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible.).

For this reason, the Court finds that the ALJ did not err in evaluating the third-party statements

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

DATED: July 20, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE